## Back v. Back et al.

April 23, 1948.

Rehearing denied June 22, 1948.

Troy D. Savage for appellant.

Moss Noble and Roscoe Back for appellee.

OPINION OF THE COURT BY CLAY, COMMISSIONER—Affirming.

This suit was brought by five of the heirs at law of W. D. Back against their seven brothers and sisters to sell a tract of land for the purpose of satisfying certain claims of the parties, and to divide the remainder. The Court adjudged the only appellant, W. Edgar Back, entitled to the sum of $4,810.25, which constituted a lien upon the land, and ordered that it be sold to satisfy this lien and the claims of the other heirs. The controversy on this appeal involves only the right of appellant to an additional amount representing taxes and interest on a mortgage indebtedness paid by him.

At the time of W. D. Back's death in 1936, he owned a 900 acre farm in Breathitt County. It was encumbered by a mortgage in the principal sum of approximately $5,000, which had been executed to one Robert Wallace. Subsequently the mortgagee Wallace filed suit against all of the heirs at law and obtained a judgment of foreclosure.

On August 12, 1940, for the purpose of liquidating this judgment debt and to avoid a sale of the property, the widow of W. D. Back and all his heirs at law entered into a written agreement with one of the heirs, Charles L. Back, whereby Charles agreed to assume the indebtedness. In return for the undertaking on his part, Charles was to have "full and complete control of all of said real estate until the youngest heir arrives at the age of 21 * * *." The contract further provided: "All the proceeds from the said lands shall be in lieu of interest and taxes, and all excess, if any, shall belong to him individually." The heirs were to repay Charles their proportionate part of the principal of the debt.

On January 25, 1941, Charles Back executed a written agreement with the mortgagee Wallace, whereby he agreed, among other things, to pay the taxes and to pay on the indebtedness a sum of not less than $50 per month until the obligation was finally liquidated. Charles Back had some difficulty in keeping up the payments provided in this contract, and on September 1, 1941, appellant undertook to assist in the retirement of the debt. On that date an endorsement was made on

the back of the heirs' agreement dated August 12, 1940, as follows:

"In consideration of W. Edgar Back (appellant) paying one-half of the amount of the contract between Robert Wallace and Charles L. Back, to wit: Three Thousand Forty-eight Dollars and Eighty Cents ($3,-048.80), and paying same to Robert Wallace at not less than the sum of $25.00 per month, as provided in said agreement, I hereby assign to the said W. Edgar Back one-half of all the benefits provided for in said agreement, and I, the said W. Edgar Back, agree to bear one-half of all expenses provided for in said contract. I agree that the within typed copies are true copies of the original agreement. It is agreed that as soon as the indebtedness is paid that there shall be an immediate division.

> (Signed)   Charles L. Back
>
> (Signed)   W. Edgar Back

I hereby agree to the above

> (Signed)   Robert Wallace, this September 1, 1941."

In accordance with this assignment, or agreement, appellant began making payments to the judgment debtor and also paid taxes against the property. Subsequently Charles Back joined the Army, and appellant, with some help from appellee Carl Back, finally in January 1946 satisfied the judgment debt in full.

There is no dispute about the amounts appellant claims to have paid. Appellees, however, insist he is only entitled to reimbursement for the payment made on the principal of the debt. Their argument is that under the April 12, 1940 contract between Charles Back and the other heirs, which contract was later assumed in its entirety by appellant, the person in control of the farm was not entitled to any credit for interest on the indebtedness or taxes paid. Appellees further insist that appellant is estopped to claim any interest or tax payments because his brothers and sisters were led to believe that he had taken over the liquidation of the indebtedness under the same terms that appeared in the August 12, 1940 contract.

Applicable principles of law are not in dispute. Where an heir discharges a valid encumbrance against property, jointly owned, he is subrogated to the rights of the creditor, and would normally be entitled to interest paid. See 14 Am. Jur., Cotenancy, Section 45, and Ft. Jefferson Improvement Co. v. Dupoyster, 112 Ky. 792, 66 S. W. 1048, 2 L. R. A., N. S., 263. The same principle applies in the payment of taxes by a co-tenant. Gibson v. Western & Southern Life Insurance Company et al., 161 Ky. 810, 171 S. W. 390, L. R. A. 1915D, 697. Where, however, the party making payment has by contract or his actions relinquished certain of his rights, he of course is not entitled to full subrogation and contribution.

Under the contract of April 12, 1940, it is clear that when Charles Back undertook to liquidate the indebtedness he agreed to pay the interest and taxes in return for the control and use of the farm. The other heirs thereby parted with their right to a share in the income from the property and undertook only to contribute their share of the principal. On September 1, 1941, by virtue of the assignment, appellant agreed to carry out to the extent of 50 percent the undertaking of Charles. He insists that he only assumed half of the obligation to the mortgagee Wallace, but the evidence convinces us otherwise. Appellant knew of the original 1940 contract (being a party thereto), and when he assumed part of his brother's obligation he must be held to have assumed its incidents. The evidence is to the effect that thereafter he actually participated jointly with Charles in the control and use of the farm. Still later he undertook to liquidate the entire obligation. Standing in the shoes of Charles, he had the right to all the income from the farm, and in return it was his personal obligation to pay the interest and taxes.

Appellant's principal argument is that as a matter of fact he did not exercise any control over the property; that he was employed in Dayton, Ohio, and did not live on or near the land; that his mother continued to live at the old home place, rented out the property, and received all the income therefrom; and that appellant never did realize one cent from it. In effect he argues a failure of consideration for his agreement, either express or implied, that he would pay out of his own pocket

the interest on the indebtedness and the taxes on the land.

The evidence is conflicting as to whether or not appellant exercised control over the property and whether or not he received any income therefrom. It does appear, however, that though he had *the right* to manage and control the land and receive the income, he turned the place over to his mother. We must say that this was highly commendable on his part. However, this was a voluntary relinquishment of his rights.

The record indicates that appellant made a bad bargain. In all fairness, if appellant's testimony correctly portrayed the situation, his brothers and sisters should gladly have repaid him their proper share of the amounts he actually expended to protect their property. Yet they are not legally bound to do so in view of his assumption of the contract originally made with his brother Charles. It is our conclusion that the evidence supports the finding of the Chancellor and he correctly determined the rights of the parties.

The judgment is affirmed.